**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------X

WINKING GROUP, LLC,

                     Plaintiff(s),

        -against-

ASPEN AMERICAN INSURANCE COMPANY,

                    Defendant(s).

------------------------------------------------------------------------X

Civil Action No.
1:16-cv-7401-LGS

---

**BRIEF IN SUPPORT OF**
**ASPEN AMERICAN INSURANCE COMPANY'S**
**MOTION FOR SUMMARY JUDGMENT**

---

On the Brief:
Mark L. Antin, Esq.

## TABLE OF CONTENTS

PROCEDURAL HISTORY..................................................................................1

SUMMARY ARGUMENT ................................................................................1

STATEMENT OF FACTS .................................................................................2

LEGAL ARGUMENT........................................................................................3

POINT I .............................................................................................................3

APPLICABLE STANDARD GRANTING SUMMARY JUDGMENT
[SUMMARY JUDGMENT IS APPROPRIATE UNDER THE
STANDARD OF REVIEW THAT APPLIES IN THIS MATTER]...................3

POINT II ............................................................................................................4

THE ENTRUSTMENT POLICY PROVISION IS ENFORCEABLE HERE....................4

CONCLUSION...................................................................................................13

i

## TABLE OF AUTHORITIES

*Abrams v. Great American Ins. Co.,*
  269 N.Y. 90 (1935) ...............................................................................................6

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986)...............................................................................................3

*AXA Art Ins. Corp. v. Renaissance Art Invs., LLC,*
  32 Misc. 3d 1223 (A), at *4 (N.Y. Sup. Ct. 2011,
  aff'd 102 A.D. 3d 604 (1st Dept. 2013) ...............................................................6

*Bainbridge, Inc. v. Calfarm Ins. Co.,*
  2004 WL 2650892 (Cal. App. Ct. 11/22/2004) ...................................................10

*Bita Trading, Inc. v. Nationwide Mutual Ins. Co.,*
  No. 13 Civ. 1548, 2015 U.S. Dist. LEXIS 13427.................................................11

*Camera Mart v. Lumbermen's Mut. Cas. Co.,*
  58 Misc. 2d 448 (Civ. Ct. 1968), aff'd 64 Misc. 2d 860 (App. Term 1969) ........9

*John T. Casey, Sr. v. General Accident Ins. Co.,*
  178 A.D. 2d 1001 (4th Dept. 1991) .......................................................................7

*Celotex Corp. v. Catrett,*
  177 U.S. 317 (1986)................................................................................................3

*Continental Casualty Co. v. Rapid-American Corp.,*
  80 N.Y. 2d 640N.Y.S. 2d 966 N.E. 2d 506 (1993)................................................8

*Cougar Sport v. Hartford Ins. Co. of Midwest,*
  190 Misc. 2d 91 (N.Y. 2000), aff'd 288 A.D. 2d 55 (1st Dept. 2001) ..................7

*Dallas Aerospace, Inc. v. CIS Air Corp.,*
  352 F. 3d 775 (2nd Cir. 2003).................................................................................4

*Easy Corner, Inc. v. State National Ins. Co.,*
  56 F. Supp. 3d 669 (E.D. Penn. 2014)...............................................................9, 11

*F.D. Stella Prods. Co. v. Gen. Star Indem. Co.,*
  No. 03-5151, 2005 WL 3436388 (N.D. Ill., 12/12/2005)..................................9, 10

*Grover Commercial Enterprises, Inc. v. Aspen Insurance UK, Ltd.,*

No. 3D14-1987 LT No. 12-36648 (Fl. App. Ct. 9/7/16) ...................................................10

*Hicks v. Baines,*
   593 F. 3d 159 (2nd Cir. 2010)...........................................................................................4

*Lexington Park Realty, LLC v. National Union Fire Ins. Co. of Pittsburgh, PA.,*
   120 A.D. 3d 413 (1st Dept. 2014)......................................................................................5

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
   475 U.S. 574, 586 (1986)...................................................................................................4

*Plaza 61 v. N. River Ins. Co.,*
   446 F. Supp. 1168 (M.D. Pa. 1978).................................................................................10

*Selevan v. New York Thruway Authority,*
   711 F. 3d 253 (2nd Cir. 2013)............................................................................................3

*Su. v. New Century Ins. Servs., Inc.,*
   CV 12-0384, 2013 WL 5775160 at *4 (C.D. Cal. 10/25/2013)......................................11

<u>Rules</u>

Federal Rule of Civil Procedure 56(a) ..............................................................................3

## PROCEDURAL HISTORY

Prior to the filing of this action, plaintiff filed an insurance claim with the defendant for damage to restaurant premises located at 75 East Broadway, New York, New York, which were discovered to be vandalized on or before January 23, 2015. After an investigation, including examinations under oath of representatives of the plaintiff, the defendant denied the claim based on certain provisions of the insurance policy which preclude coverage for damage caused by, among other things, property that was entrusted to the persons causing the damage.

Plaintiff, the Winking Group, Inc., filed this action in the Supreme Court of the State of New York on September 12, 2016. Pursuant to 28 U.S.C. 1332 and 1441, defendant removed the action to this Court and filed its Answer on September 30, 2016.  Limited pre-trial discovery has been completed. The discovery period established by this Court ended on April 18, 2017.

Defendant sought permission to file a summary judgment motion by letter dated April 24, 2017 and the Court granted the request at a conference on May 9, 2017.

## SUMMARY ARGUMENT

Plaintiff's Complaint should be dismissed because its claim arises from vandalism caused by someone to whom the property was entrusted.  The "entrustment" exclusion in the insurance policy issued by Aspen has been found by New York and other courts to be enforceable. Defendant Aspen asserts that the exclusion applies to the circumstances of the plaintiff's loss.  Plaintiff's position in opposition, that the loss was not caused by vandalism resulting from the acts of entrusted persons, lacks any evidentiary support in the face of its previous claims to the contrary and defendant's evidence to the contrary.  It's further claim that the entrustment exclusion in the policy does not apply here is also unsupported by the facts and any legal authority.

1

## STATEMENT OF FACTS

Winking Group, Inc. leased the premises at 75 East Broadway (South Building) to Ming Dynasty in 2001. Subsequently, and with Winking's full knowledge and approval, the premises were sub-leased to East Market Restaurant, Inc. (hereinafter "East Market"), for the purpose of operating a restaurant. See, Antin Decl., par. 5. The relationship continued in this manner until, in or about 2014, when East Market failed to make rental payments and the lease went into default. Id., par. 6. Winking sought eviction and possession of its property as a result of non-payment of rent. This dispute was temporarily resolved by a Stipulation of Settlement dated November 13, 2014, annexed to the Declaration of Mark L. Antin (hereafter "Antin Decl.") as Exhibit F, which allowed a warrant for possession to be issued but not executed until January 10, 2015. Thereafter, there was no change in the status of the agreement between the parties and the warrant was executed on or about January 11, 2015.

On or around January 11, 2015, the premises were posted and the sub-tenant was evicted. *See*, Antin Decl., Exhibit I. Sometime, either before the posting of the premises or during the several weeks thereafter, up to January 23, 2015, the premises were vandalized. Plaintiff has alleged to the New York City Police Department, see Antin Decl. Exh. H and to the defendant's adjuster, see Ballot Aff. 11, and during examinations under oath, see, Antin Decl., par. 10, that the damage to its premises were caused by East Market. It has suggested no other person who had a motive or the opportunity to vandalize the premises other than the operators of the restaurant who had been or were about to be evicted. The nature and degree of damage certainly suggests animosity by those involved in causing the damage.[1]

---

[1] During the insurance investigation, it was learned that on an undetermined date, an employee of Plaintiff observed unusual activities going on at the premises and took a video of those activities. The video was sent to employees of the Plaintiff, who claim never to have received it. The video itself has never been located. See, Antin Declar, par. 8.

2

The claim was denied based on the entrustment exclusion of the Aspen policy. The matter is now before the Court for a determination.

## LEGAL ARGUMENT

### POINT I

#### APPLICABLE STANDARD GRANTING SUMMARY JUDGMENT [SUMMARY JUDGMENT IS APPROPRIATE UNDER THE STANDARD OF REVIEW THAT APPLIES IN THIS MATTER]

It has been often stated, under Federal Rule of Civil Procedure 56(a), summary judgment may be granted by this Court only if all of the submissions, on both sides, taken together, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 177 U.S. 317, 322 (1986) and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). We recognize that defendant, as the moving party, bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. 323. A fact is "material" if it may affect the outcome of the lawsuit under the governing law and is generally disputed by admissible evidence. *Anderson*, 477 U.S. 248.

In the present matter, there are only a few facts which are material to the outcome of the litigation. The question of who was responsible for the vandalism is one such fact which the moving party has the burden of establishing. However, the defendant, as the movant, may meet this burden by showing that the non-moving party has "fail[ed] to make a showing sufficient to establish the existence of a genuine dispute of fact in this regard. *Selevan v. New York Thruway Authority*, 711 F. 3d 253, 256 (2nd Cir. 2013), where summary judgment is found to be appropriate because the non-moving party failed to "come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on an essential element of the claim".

In the present matter, **plaintiff** has conceded the fact that the damage was caused by the

3

subtenant, East Market.  They reported to the police that representatives of East Market were responsible for the damage.  They repeated, at examinations under oath, that the vandalism was caused by the subtenant, and a lawsuit was filed by Ming Dynasty in which it was alleged that the subtenant and its principals were responsible for damage to the premises.

Under the standards to apply in a summary judgment motion, the moving party has come forward with sufficient evidence to establish that vandalism by the subtenant was the cause of the damage. No effort by the plaintiff, now can dispute that the moving party has satisfied its burden on this material issue of fact, even though the Court is required to construe the facts in a light most favorable to the plaintiff and is required to resolve all ambiguities and draw all reasonable inferences against the moving party. *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F. 3d 775, 780 (2nd Cir. 2003).  No metaphysical doubt as to this material fact can be sufficient to oppose or place that fact in issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Nor can conclusory allegations or denials of fact create a genuine issue as to that fact. *Hicks v. Baines*, 593 F. 3d 159, 166 (2nd Cir. 2010).

As for the timing of the vandalism, it makes no difference whether the vandalism occurred before the subtenants were evicted or shortly thereafter.  Aspen is not required to demonstrate the timing of the acts when, as indicated in the discussion below, the responsible party was someone to whom the property was entrusted. *See*, Point II, *infra.*

There is no genuine issue of material fact to be tried, and moving party, Aspen, is entitled to judgment as a matter of law dismissing plaintiff's Complaint with prejudice.

## POINT II

### THE ENTRUSTMENT POLICY PROVISION IS ENFORCEABLE HERE

The facts and circumstances surrounding the vandalism claim by the plaintiff, caused by

4

sub-tenant East Market, place it squarely within the entrustment exclusion such that the claim must be denied.

The entrustment exclusion in the Aspen policy states as follows:

> 2.     We will not pay for loss or damage caused by or resulting from any of the following:
>
> \*\*\*
>
> h.     Dishonest or criminal act by you, any of your partners, members, officers, managers, employees (including leased employees), directors, trustees, authorized representatives **or anyone to whom you entrust the property for any purpose:**
>
> > (1)    Acting alone or in collusion with others; or
> >
> > (2)    Whether or not occurring during the hours of employment.
>
> This exclusion does not apply to acts of destruction by your employees (including leased employees); but theft by employees (including leased employees) is not covered.

The entrustment exclusion relied upon by Aspen has been considered and enforced both in New York and in a number of other states which have reviewed the policy provision. We first consider the New York authorities and then discuss the out of state decisions.

In *Lexington Park Realty, LLC v. National Union Fire Ins. Co. of Pittsburgh, PA.*, 120 A.D. 3d 413 (1st Dept. 2014), the Appellate Division reviewed and confirmed dismissal of the Complaint based upon the entrustment exclusion in the National Union policy. Lexington Park leased the insured premises to a tenant which converted the premises into a youth hostel. In the course of the conversion, the tenant removed kitchen cabinets and appliances so that such area could be turned into additional dormitory space. When the hostel closed for business, it failed to

5

return the cabinets or appliances. Plaintiff then made claim to National Union for the theft or conversion of the property. National Union contended that the cabinets and appliances were entrusted to the tenant and that the insurance policy provision which excluded coverage for property entrusted to another would apply. In the first of several cases discussed below, the Court referred to *Abrams v. Great American Ins. Co.*, 269 N.Y. 90, 92 (1935), in which the Court of Appeals explained that the language of an insurance policy must be given its ordinary meaning and that absent any definition in the policy, words such as "entrusted" should be treated in that fashion. The *Lexington Park* Court reiterated that entrustment means that property is willingly surrendered or delivered or transferred to be used for the purpose intended by the owner, and that the controlling element is the intent of the owner rather than the motive of the person who obtained possession.

> Here, we find that the terms of the policy at issue do not limit what can be entrusted, that property may be entrusted to another under a triple net lease agreement, and that the entrustment refers to the entirety of the premises unless otherwise specified.

> *Lexington Park, supra.*, at 414.

In *AXA Art Ins. Corp. v. Renaissance Art Invs., LLC*, 32 Misc. 3d 1223 (A), at *4 (N.Y. Sup. Ct. 2011, aff'd 102 A.D. 3d 604 (1st Dept. 2013), AXA instituted a declaratory judgment action for a determination of no coverage under the insurance policies issued by it to Renaissance Art Investors, LLC (hereafter "RAI"). AXA sought a declaration that it had no duty to indemnify RAI for its claimed loss which resulted from fraudulent activity on the part of Lawrence Salander. The insurance policies excluded any fraudulent, dishonest or criminal act by "you, anyone else with an interest in the property or your or their employees whether or not committed alone or in collusion with others, whether or not such act or acts be committed during the hours of

6

employment, or anyone entrusted with the covered property."

In a separate action, RAI sued Salander, alleging that he committed fraud, breach of fiduciary duty and unjust enrichment as a result of his handling of various artwork. The evidence showed that there was a consignment agreement which granted Salander power to buy, sell and make other decisions regarding those works. Based upon *Abrams v. Great American Ins. Co.*, supra, the Court concluded that the consignment agreement resulted in "entrustment" of the property to Salander. Accordingly, the Court found in favor of the insurance carrier.

In *Cougar Sport v. Hartford Ins. Co. of Midwest*, 190 Misc. 2d 91, 94 (N.Y. 2000), aff'd 288 A.D. 2d 55 (1st Dept. 2001), the insured was an importer of children's wearing apparel. The goods were manufactured in the Far East and shipped to a port in New Jersey. The goods were then delivered by truck either directly to a customer or to certain warehouses. One such warehouse was located in Secaucus, where plaintiff had an oral agreement for the storage and handling of its goods. It had used the warehouse without incident for several years. After the goods were at the warehouse, plaintiff would generate shipping orders to various locations, instructing the warehouse which carrier to use. It was agreed between the parties that although the warehouse would manipulate the goods while in its possession, once the goods were moved out to the loading dock, the warehouse's responsibilities ended.

Cougar Sports alleged that the loss to its goods occurred on a date certain when the warehouse sold the goods to a salvage company in order to cover Cougar's arrearages resulting from failure to pay warehouse charges. It was alleged that the warehouse's sale of the goods occurred without notice to plaintiff and without justification. Plaintiff asserted that the actions amounted a theft because they were unauthorized.

The policy issued by Hartford covered plaintiff's goods while in the warehouse. However,

7

it excluded any loss resulting from a "dishonest or criminal act by plaintiff or 'anyone other than a carrier for hire to whom plaintiff entrusts the property for any purpose'". The Court reviewed the concept of entrustment, noting that it was not a defined term in the policy and that, therefore, the term must be given its plain and ordinary meaning. The insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in this particular case. *Continental Casualty Co. v. Rapid-American Corp.*, 80 N.Y. 2d 640, 652, 593 N.Y.S. 2d 966, 609 N.E. 2d 506 (1993) and others. Thus, in using the word "entrust", the parties in this case

> "must be deemed to have entertained the idea of a surrender or deliver or transfer of possession with confidence that the property would be used for the purpose intended by the owner and as stated by the recipient."

*Abrams, supra, 92*

The entrustment exclusion in an insurance policy has been held to apply when the owner of the property relinquishes custody to another with whom he had prior dealings, even though that person turned out to be a thief. *Id.* It is the state of mind of the person turning over possession of the property, and not the recipient, which determines whether there has been an entrustment. *Id.* The exception to this rule that occurs when the entrustment has been obtained solely as a result of "unmitigated deceit from the outset" as to both the recipient's intent and identity. Ultimately, the Court held that plaintiff did surrender its property to the defendant with confidence that the property would be used for the purpose intended by the plaintiff; namely, temporary storage. Under these circumstances, the controlling factor is the plaintiff's state of mind at the time it turned the goods over to the warehouse. As applicable to the present matter, plaintiff, Winking, leased the property to Ming Dynasty, which, in turn, for more than 6 years, sub-leased the space to East Market for use as a restaurant. Winking acceded to the possession of the property by East Market

8

such that there can be no doubt about its intent to allow East Market possession of the property.

The decision in *Camera Mart v. Lumbermen's Mut. Cas. Co.*, 58 Misc. 2d 448, 452 (Civ. Ct. 1968), aff'd 64 Misc. 2d 860 (App. Term 1969) is not to the contrary. In that case, the Court found that the party who gained possession of the property had planned from the outset to deceive the entruster of the property and steal it. In that case, there was no entrustment. Here, however, for more than 6 years prior to the incident, both Ming Dynasty and Winking well knew the sub-tenant, East Market, and willing granted possession of the property and entrusted it to East Market in return for rent. The facts here distinguish *Camera Mart*, and, in fact, bring the matter squarely within the entrustment exclusion of the policy.

In addition to the New York authorities referred to above, the Court may also be interested in reviewing the matter of *Easy Corner, Inc. v. State National Ins. Co.*, 56 F. Supp. 3d 669 (2014 E.D. Penn. 2014). In that case, the exclusion from coverage is similar to the present matter in that the insurance company stated that it would not pay for loss or damage caused by or resulting from a dishonest or criminal act including theft by "any person to whom you entrust the property for any purpose, whether acting alone or in collusion with any other party." The exclusion applied whether or not the act occurred during normal hours of operation. In that case, the language of the exclusion was somewhat different than the Aspen exclusion in this case. That the entrustment's application only to "theft" is not relevant to the present matter. The case does specifically address the "timing" of the entrustment and to what circumstances it applies. It referred to and, ultimately, agreed with cases such as *F.D. Stella Prods. Co. v. Gen. Star Indem. Co.*, No. 03-5151, 2005 WL 3436388 (N.D. Ill., 12/12/2005). In that case, another restaurant began operating at the property **with the knowledge of the plaintiff,** which contacted the new restaurant regarding financing of their property. However, the parties were unable to come to an agreement regarding lease, sale or

9

use of the property. The plaintiff then obtained a judicial order requiring the restaurant operator to relinquish possession of the property but when plaintiff inventoried the property, it was discovered that quite a bit had been removed, including a number of appliances. The Court held that the entrustment exclusion "applies even if the dishonest or criminal act occurs after the entrustment has terminated." *Id.* at *7.

Other authorities relied upon in *Stella, supra.* were *Bainbridge, Inc. v. Calfarm Ins. Co.*, 2004 WL 2650892 (Cal. App. Ct. 11/22/2004) and *Plaza 61 v. N. River Ins. Co.*, 446 F. Supp. 1168 (M.D. Pa. 1978). In *Bainbridge*, a former employee who had resigned from the insured company temporarily turned in his personal laptop so that the company could remove certain proprietary data contained on the hard drive. When the plaintiff returned to retrieve his computer, he got into a fight with one of the company's owners and forcibly retrieved his computer, which still contained the proprietary information. In construing the language of the insurance policy, the Court concluded:

> We construe this language to require nothing more than a causal connection between the act of entrustment and the resulting loss, even if the loss occurs after the entrustment has terminated.

*Id.* at *6.

To the same effect is *Plaza 61, supra.*, which applied Pennsylvania law to an entrustment exclusion in which it was also alleged that the relationship between the alleged thief and the insured had terminated before the theft occurred. In that case, too, the Court found that the entrustment exclusion applies "even after the 'temporal' termination of an entrustment", provided that there is a causal connection between the act of entrustment and the resulting loss.

In another case, *Grover Commercial Enterprises, Inc. v. Aspen Insurance UK, Ltd.*, No. 3D14-1987 LT No. 12-36648 (Fl. App. Ct. 9/7/16), Grover owned commercial property insured

10

by Aspen. The policy contained an entrustment exclusion which excluded from coverage loss or damage caused by "any 'dishonest or criminal act by you...or anyone to whom you entrust the property for any purpose'". During the policy period, Grover leased the premises for the purpose of operating a restaurant and also leased certain business personal property located on the premises as set forth in the agreement. After the lease terminated and while vacating the premises, the owner of the restaurant removed most of the business personal property which belonged to the plaintiff and the real property was damaged in the process. The insured, Grover, then filed a claim against Aspen for the damage, advising that the property sustained the loss due to "theft" and "vandalism". Parties made motions for summary judgment. The trial court denied the insured's motion for summary judgment and granted Aspen's motion. The matter then proceeded to an appeal. In that appeal, Aspen argued that it was not liable for because the leasing of the premises "is a manifestation of the 'entrustment' of commercial property and that any removal by the entrustee was a criminal act not covered by the policy. In considering the word "entrust", the Court accepted the plain and ordinary meaning of the term, which was to confer a trust on or to commit to another with confidence.

The Court determined that the term "entrust" properly characterized the relationship between the landlord and his tenant. The landlord surrendered possession of its real and personal property to the tenant, and did so with confidence that the tenant would use the property in accordance with the terms of the lease and would not damage, steal or dispose thereof. Like the Pennsylvania court in *Easy Corner, Inc.*, the Florida court also considered cases from other jurisdictions, including *Bita Trading, Inc. v. Nationwide Mutual Ins. Co.*, No. 13 Civ. 1548, 2015 U.S. Dist. LEXIS 13427, at *18 (S.D. Cal. 2/3/2015) and also relying upon *Su. v. New Century Ins. Servs., Inc.*, CV 12-0384, 2013 WL 5775160 at *4 (C.D. Cal. 10/25/2013). We have attached

11

copies of these cases to the Antin Declaration for the convenience of the Court.  In both cases, the California courts stated that the entrustment exclusion in the defendants' insurance policies would apply to preclude coverage for vandalism regardless of when the vandalism occurred, so long as the acts were causally related to the entrustment.  Disputes between landlords and tenants resulting in either theft or vandalism are not uncommon but coverage for such damages are specifically precluded by the terms of the insurance policies at issue in those cases.

The authorities, both New York and in other states, reveal that the custody of the property had been entrusted by the insured, Winking, to both tenant Ming Dynasty to the subtenant, East Market, and that the timing of the criminal act in relation to the entrustment, 6 years earlier, occurred within days or weeks before or after the eviction notice was posted. There is no material difference between this case and the others discussed above. Moreover, under those prevailing legal authorities, it should make no difference when the vandalism occurred because the vandalism was clearly "causally related" to the entrustment. There are no ambiguities in the language of the policy to resolve and no question that only East Market had access to their premises.

Based on the undisputed facts and the law set forth above, defendant Aspen asserts that it is entitled to rely upon the entrustment exclusion and that dismissal of the complaint would be appropriate. .

12

## CONCLUSION

For all of the foregoing reasons, defendant Aspen American Insurance Company respectfully submits that it is entitled to summary judgment dismissing the Complaint with prejudice.

Dated: New York, New York
     May 31, 2017

           GENNET, KALLMANN, ANTIN,
            SWEETMAN & NICHOLS, P.C.
           Attorneys for Defendant,
           Aspen American Insurance Company
           115 Broadway, Goldman Suite 302
           New York, NY 10006
           (212) 406-1919
           Our File No.: 14-8781:260.0157-A

           By: _____
                 MARK L. ANTIN

TO:    Craig A. Blumberg, Esq.
       Law Office of Craig A. Blumberg
       Fifteen Maiden Lane – 20th Floor
       New York, New York 10038-4003
       Attorneys for Plaintiffs

13