**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------X          Civil Action No.
WINKING GROUP, LLC,                                                                 1:16-cv-7401-LGS

                                        Plaintiff(s),

                    -against-

ASPEN AMERICAN INSURANCE COMPANY,

                                        Defendant(s).
-------------------------------------------------------------------------X

---

**REPLY BRIEF IN SUPPORT OF**
**ASPEN AMERICAN INSURANCE COMPANY'S**
**MOTION FOR SUMMARY JUDGMENT**

---

On the Brief:
Mark L. Antin, Esq.

## TABLE OF CONTENTS

PROCEDURAL HISTORY.........................................................................................................1

SUMMARY OF REPLY .........................................................................................................1

THE UNDISPUTED FACTS ..................................................................................................1

LEGAL ARGUMENT.............................................................................................................3

POINT I ...................................................................................................................................3

DIRECT AND CIRCUMSTANTIAL EVIDENCE DEMONSTRATES
THAT EAST MARKET CAUSED THE VANDALISM .......................................................2

POINT II...................................................................................................................................4

ASPEN'S ENTRUSTMENT EXCLUSION IS ENFORCEABLE HERE
TO PRECLUDE COVERAGE FOR THE WINKING CLAIM ............................................4

CONCLUSION.........................................................................................................................7

## TABLE OF AUTHORITIES

*2900 Rock Quarry, LLC v. Westfield Insurance Company*,
2017 WL 2616961 (E.D. North Carolina 06/14/2017) ................................................6

*Bainbridge, Inc. v. Calfarm Ins. Co.*,
2004 WL 2650892 (Cal. App. Ct. 11/22/2004) ................................................6

*Bita Trading, Inc. v. Nationwide Mutual Ins. Co.*,
No. 13 Civ. 1548, 2015 U.S. Dist. LEXIS 13427, at *18 (S.D. Cal. 2/3/2015) ................6

*Cougar Sport v. Hartford Ins. Co. of Midwest*,
190 Misc. 2d 91 (N.Y. Sup. Ct. N.Y. Cty. 2000),
 *aff'd* 288 A.D. 2d 55 (1st Dept. 2001) ................................................5

*F.D. Stella Prods. Co. v. Gen. Star Indem. Co.*,
 No. 03-5151, 2005 WL 3436388 (N.D. Ill., 12/12/2005) ................................................5

*Finley v. Commissioner of Correction*,
 27 Fed. Appx. 46 (2nd Circ. 2001) ................................................3

*Harary v. Allstate Ins. Co.*,
 988 F. Supp. 93 (E.D.N.Y. 1997) ................................................3

*Plaza 61 v. N. River Ins. Co.*,
446 F. Supp. 1168 (M.D. Pa. 1978) ................................................6

*Su. v. New Century Ins. Servs., Inc.*,
CV 12-0384, 2013 WL 5775160 at *4 (C.D. Cal. 10/25/2013) ................................................6

*Van Sumner, Inc. v. Pennsylvania Nat. Mut. Cas. Ins. Co.*,
329 S.E. 2d 701 (1985). ................................................6

## PROCEDURAL HISTORY

This reply is respectfully submitted to the Court in support of defendant Aspen's motion for summary judgment. With this reply, the motion is now fully submitted.

## SUMMARY OF REPLY

The plaintiff raises two issues in its opposition to defendant's motion. First, it argues that there is insufficient proof on this motion to establish that the vandalism of plaintiff's premises was caused by sub-tenant East Market. In Point I below, the defendant argues that the direct and circumstantial evidence, particularly in the face of no evidence to the contrary, is more than sufficient to warrant summary judgment. Second, plaintiff argues that the "entrustment" ended before the sub-tenant vandalized the premises such that the insurance policy endorsement is not enforceable. In Point II below, the defendant argues that the nationwide authorities which have addressed this issue indicate that it makes no difference when the vandalism occurred.

## THE UNDISPUTED FACTS

The Affidavit of William Lam and plaintiff's response to defendant's Statement of Undisputed Material Facts, submitted in opposition to the motion, do not significantly alter the essential facts now before the Court. In its "Opposition", plaintiff admits that the relevant policy language is the language cited by defendant and that the relationship between the plaintiff and East Market is as described in Pars. 1 and 2 of defendant's SUMF. Plaintiff denies the allegations of Par. 3 but its denial does not materially change the facts because East Market was to vacate the premises, pursuant to an agreement, by January 10, 2015, as indicated in Par. 4, which the plaintiff has admitted. Plaintiff disputes Par. 5; that the vandalism occurred before January 10, but offers no evidence that anyone entered the premises before that date, or after that date and before January 23, 2015, who can verify when the damage occurred. However, again, it makes no difference.

1

Whether the vandalism occurred before or after the eviction date, there is no doubt that it was perpetrated by someone to whom the premises were entrusted, the purpose of Aspen's exclusion. Plaintiff also admits that it informed the defendant, the New York City Police Department that the sub-tenants were responsible for the damage. Ming Dynasty, the tenant, filed a complaint against East Market alleging that the sub-tenants were responsible for the damage. Pars. 6-9 and 12. Plaintiff further admits that there were no signs of forced entry and that it "appears that whoever perpetrated the vandalism had a key to the premises". Par. 10.

The denial reflected in plaintiff's response to Par. 13 is the dispute to be resolved by this Court. We note in this regard Mr. Lam's statement, in Par. 6 of his Affidavit, that despite the "eviction" of the tenant, keys to the premises were not retrieved from the evicted tenant and the locks to the premises were not changed **until January 23, 2015**, by which time the damage had already occurred.

## LEGAL ARGUMENT

### POINT I

### DIRECT AND CIRCUMSTANTIAL EVIDENCE DEMONSTRATES THAT EAST MARKET CAUSED THE VANDALISM

In this motion, Aspen asserts that East Market was responsible for the vandalism which underlies plaintiff's insurance claim. Among plaintiff's responses to the motion is the contention that there is insufficient evidence to establish that East Market was, in fact, responsible for the damage. Aspen asserts that the evidence it has offered is more than sufficient for this Court to conclude on a summary judgment motion that East Market was the perpetrator and that plaintiff has failed to come forward with any evidence that someone else did the damage.

Proof that East Market vandalized the premises takes a number of forms. First, we have

2

multiple admissions by the plaintiff that the damage was caused by East Market. Such admissions were made not only during the initial insurance claim to the insurance adjuster, but repeated under oath during the insurance investigation to counsel for Aspen. Second, representatives of the plaintiff specifically stated to the New York City Police Department that the damage was caused by East Market. Third, in a lawsuit filed by Ming Dynasty against East Market, it was alleged by Ming that East Market damaged the premises. In the face of these admissions and evidence, plaintiff now seeks to disavow them. Further, plaintiff has failed to point to any person or entity other than East Market who was or might have been responsible for the damage.

The circumstances of the damage also present additional circumstantial evidence which points directly to East Market. Access to the second floor restaurant was exclusively in the control of East Market, which normally gained entry using a key through a door at sidewalk level. The keys to that door were in the possession of East Market employees and **not retrieved from those employees before January 23, 2015,** according to Mr. Lam's Affidavit. When the damage was discovered on the 23rd, that downstairs door was locked and there was no sign of forced entry. This evidence, circumstantial in nature, can and should be considered by this Court along with the other evidence presented on this motion. See, for example, the accepted use of circumstantial evidence in such cases as *Ocean Walk, Ltd. v. Those Certain Underwriters*, 2006 WL 2689626 (E.D.N.Y. 2006); *Finley v. Commissioner of Correction*, 27 Fed. Appx. 46 (2nd Circ. 2001); *Harary v. Allstate Ins. Co.*, 988 F. Supp. 93 (E.D.N.Y. 1997).

Plaintiff has admitted in response to defendant's Statement of Material Undisputed Facts, Par. 10, that "whoever perpetrated the vandalism had a key to the premises" but plaintiff has not shown that anyone had a key **other than** representatives of East Market. Moreover, no one else is identified by plaintiff as having a motive to cause the damage. No one else threatened that such

3

damage would occur or "took credit" for the vandalism. Plaintiff has not identified anyone who had a dispute, grudge, disagreement or made threats to the plaintiff or Ming. These additional circumstances are, we respectfully submit, more than sufficient, along with the other evidence referred to above, to allow this Court to conclude that the culprit was East Market. That the police did not separately identify the vandals and that Mr. Shaw (the maintenance person) did not "recognize" the perpetrators is of no consequence. [1]

### POINT II

### ASPEN'S ENTRUSTMENT EXCLUSION IS ENFORCEABLE HERE TO PRECLUDE COVERAGE FOR THE WINKNG CLAIM

Aspen asserts that its "entrustment" exclusion operates to preclude Winking's claim because the damage to the premises arose from the acts of someone to whom the premises were entrusted. This exclusion is typical in most commercial property insurance policies and has been overwhelmingly enforced. In plaintiff's opposition, it unsuccessfully attempts to distinguish the authorities relied upon by Aspen and offers no legal authorities which support its legal argument.

Winking argues that the vandalism occurred after its entrustment to East Market ended. Unfortunately, even if Winking intended to end the relationship with East Market, it neither did so physically nor metaphysically. The keys remained in East Market's possession with the locks not changed until January 23, 2015, by which time the damage had already occurred. But separate and apart from this, there is little doubt that the damage was caused by someone to whom the insured "entrusted the property for any purpose." Plaintiff's attempts to regain possession of the property did not terminate that the entrustment had occurred for many years. In fact, even after the filing of the lawsuit seeking possession, pursuant to the November settlement agreement, East Market was

---

[1] Mr. Shaw sent a video to his employer, Winking. Though the video has not been recovered, we presume that it confirmed for Winking that East Market owners or employees were, in fact, the culprits.

4

allowed to remain in possession of the premises through the end of the year and into early the following year.

In plaintiff's efforts to distinguish the authorities cited by Aspen in support of the motion, it asserts that in none of those matters did the vandalism occur after the entrusted party was "legally evicted" from the premises. That should not matter because the damage still occurred as a result of conduct by someone to whom the premises had been entrusted. However, in *Lexington Park Realty, LLC v. National Union Fire Ins. Co. of Pittsburgh, PA*, 120 A.D. 3d (1st Dept. 2014), the conversion occurred not when the cabinets and appliances were removed by the tenant during its occupancy, but after the lease was terminated and the tenant failed to return or restore those fixtures. Thus, the failure occurred after the lease was over, an analogous circumstance to the damage that occurred at East Market restaurant after the tenancy was terminated. Likewise, In *Cougar Sport v. Hartford Ins. Co. of Midwest*, 190 Misc. 2d 91 (N.Y. Sup. Ct. N.Y. Cty. 2000), *aff'd* 288 A.D. 2d 55 (1st Dept. 2001), the sale of the goods by the warehouse to pay the storage costs occurred after the bailor had breached the warehouse agreement, also a circumstance similar to that present here. The distinction plaintiff seeks to draw between a theft in *Cougar Sport* and vandalism here is of no meaningful consequence.

Aspen respectfully submits that plaintiff's effort to distinguish the authorities relied upon by Aspen are unavailing. Moreover, the plaintiff has failed to cite **any** authorities which support its position that the entrustment exclusion does not apply. Plaintiff's effort to distinguish the out-of-state authorities is even less successful. Plaintiff does not explain why the substantial number of authorities from out-of-state should not provide at least some guidance for this Court. The rationale in each of those cases supports Aspen's position here.

Plaintiff has chosen not to address in its opposing brief the holding in *F.D. Stella Prods.*

*Co. v. Gen. Star Indem. Co.*, No. 03-5151, 2005 WL 3436388 (N.D. Ill., 12/12/2005). The reason is evident -- the entrustment exclusion applied there to preclude plaintiff from recovery. Likewise, plaintiff has not addressed the holding in the other authorities relied upon in *Stella, supra.,* including *Bainbridge, Inc. v. Calfarm Ins. Co.*, 2004 WL 2650892 (Cal. App. Ct. 11/22/2004) and *Plaza 61 v. N. River Ins. Co.*, 446 F. Supp. 1168 (M.D. Pa. 1978). These cases also specifically support Aspen's contention that the entrustment exclusion applies even after an action has been taken to terminate the actor's right to occupy the premises.

The plaintiff also fails to distinguish or explain why the rationale of the holdings in *Bita Trading, Inc. v. Nationwide Mutual Ins. Co.*, No. 13 Civ. 1548, 2015 U.S. Dist. LEXIS 13427, at *18 (S.D. Cal. 2/3/2015) and *Su. v. New Century Ins. Servs., Inc.*, CV 12-0384, 2013 WL 5775160 at *4 (C.D. Cal. 10/25/2013), are not convincing and applicable here. In both those cases, the California courts concluded that the entrustment exclusion in the defendants' insurance policies applied to preclude coverage for vandalism **regardless of when the vandalism occurred**, so long as the acts were **causally related** or there is a nexus to the entrustment.

These cases make clear a virtual consensus among the courts of various jurisdictions; to wit, entrustment exclusions are enforceable and will apply even after any effort to terminate the entrustment, so long as there is a causal connection or nexus between the entrustment and the damage. Although there is no evidence that the entrustment was initially misplaced, even if the entrustment had been "misplaced", the exclusion in the insurance policy will be applied. As stated recently in *2900 Rock Quarry, LLC v. Westfield Insurance Company*, 2017 WL 2616961 (E.D. North Carolina 06/14/2017):

> "Underlying these holdings is the principle that an insurer can only be responsible for that which it has agreed to insure, and that the agreed upon purpose of entrustment exclusions is to exclude coverage for the "misplaced confidence" by an insured. See *Van*

6

*Sumner, Inc. v. Pennsylvania Nat. Mut. Cas. Ins. Co.*, 329 S.E. 2d 701,704 (1985)."

Disputes between landlords and tenants resulting in either theft or vandalism at the end of a tenancy are not uncommon, and neither are insurers' efforts to specifically preclude coverage for such damage by the terms of the insurance policies at issue in those cases, and in this case. Aspen has made that position clear in its endorsement. If plaintiff wanted such coverage, it could have sought to obtain a policy without such exclusion. There is no evidence the plaintiff made such an effort.

## CONCLUSION

For all of the foregoing reasons, defendant Aspen American Insurance Company respectfully submits that it is entitled to summary judgment dismissing the Complaint with prejudice.

Dated: New York, New York
July 19, 2017

GENNET, KALLMANN, ANTIN,
SWEETMAN & NICHOLS, P.C.
Attorneys for Defendant,
Aspen American Insurance Company
115 Broadway, Goldman Suite 302
New York, NY 10006
(212) 406-1919
Our File No.: 15-8880:1311219-A

By: _____
MARK L. ANTIN

TO:    Craig A. Blumberg, Esq.
       Law Office of Craig A. Blumberg
       Fifteen Maiden Lane – 20th Floor
       New York, New York 10038-4003
       Attorneys for Plaintiff

7