```
UNITED STATES DISTRICT COURT                           USDC SDNY
SOUTHERN DISTRICT OF NEW YORK                          DOCUMENT
------------------------------------------------------------X   ELECTRONICALLY FILED
                                              :        DOC #:
WINKING GROUP, LLC,                           :        DATE FILED: 1/18/2018
                              Plaintiff,      :
                                              :        16 Civ. 7401 (LGS)
              -against-                       :
                                              :        OPINION AND ORDER
ASPEN AMERICAN INSURANCE COMPANY,             :
                              Defendant.      :
                                              :
------------------------------------------------------------X
```

LORNA G. SCHOFIELD, District Judge:

      Plaintiff Winking Group, LLC sues Defendant Aspen American Insurance Company ("Aspen"), alleging breach of an insurance contract. Defendant moves for summary judgment under Federal Rule of Civil Procedure 56. Defendant's motion is granted.

**I.    BACKGROUND**

      The facts below are drawn from the parties' Rule 56.1 Statements and other submissions on this motion, and are construed in Plaintiff's favor as the non-moving party. *See Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 71–72 (2d Cir. 2016). The following facts are undisputed.

      On July 20, 2001, Plaintiff leased the premises underlying this action -- 75 East Broadway -- to Ming Dynasty, Inc., which then sub-leased it to East Market, Inc. East Market occupied the premises with Plaintiff's knowledge and consent from 2009 to early January 2015. Plaintiff admits that it "initially entrusted the subject premises to East Market Restaurant."

      In 2014, Ming Dynasty initiated collection proceedings against East Market for non-payment of rent. The parties agreed to a Stipulation of Settlement, whereby East Market was to vacate the premises no later than January 10, 2015. On or around January 10, 2015, the premises were "posted" (i.e., a notice of eviction was posted on the door of the premises), and East Market was evicted. After the eviction notice was posted, Plaintiff did not retrieve the keys to the

property, and it did not change the locks until January 23, 2015.

Also around January 10, 2015, the premises were vandalized. On January 15, 2015, Bruce Xi, the property manager, told the New York City Police Department that East Market caused the damage to the premises.

On January 23, 2015, Plaintiff filed a Property Loss Notice (i.e., an insurance claim) with Aspen to recover for the damage. During Aspen's investigation of Plaintiff's claim, Plaintiff's representatives told Aspen's insurance adjuster, Todd Ballot, that East Market caused the damage to the premises. Plaintiff's representatives made similar statements under oath. Jing Shaw, the superintendent, testified that he witnessed and video recorded the damage; he further testified that he saw four men "bringing the things back and forth" and "breaking stuff." Shaw stated, "I don't know," when asked whether he knew any of the four men. There were no signs of forced entry, and therefore, whoever vandalized the premises likely had a key. Xi testified that only East Market had access to the restaurant. Aspen's insurance adjuster, Todd Ballot, stated in his affidavit that, "at the time of [his] first inspection . . . the premises were secure; meaning the first-floor door adjacent to the sidewalk of the premises was closed and locked."

On August 12, 2016, Aspen denied Plaintiff's insurance claim based on the "entrustment exclusion" in its insurance policy. The provision states in relevant part:

> 2. We will not pay for loss or damage caused by or resulting from any of the following:
>
> ***
>
> h. *Dishonest or criminal act by* you, any of your partners, members, officers, managers, employees (including leased employees), directors, trustees, authorized representatives or *anyone to whom you entrust the property for any purpose*:
>
> (1) Acting alone or in collusion with others; or
>
> (2) Whether or not occurring during the hours of employment.

This exclusion does not apply to acts of destruction by your employees (including leased

employees); but theft by employees (including leased employees) is not covered. (Emphasis added).

On August 26, 2015, Ming Dynasty, Plaintiff's tenant, filed a complaint in the Supreme Court of New York alleging that East Market and its principals had caused damage to the premises.

## II. STANDARD

Summary judgement is proper where the record establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of New York*, 822 F.3d 620, 631 n.12 (2d Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A party may not rely on mere speculation of conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (alterations omitted). "[M]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Id.* (internal quotation marks omitted and alteration in original).

New York law applies as the parties assume that it does. "The parties' briefs assume that [New York] state law governs this case, 'and such implied consent is . . . sufficient to establish the applicable choice of law.'" *Trikona Advisers Ltd. v. Chugh*, 846 F.3d 22, 31 (2d Cir. 2017) (quoting *Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 29 (2d Cir. 2009)).

## III. DISCUSSION

Summary judgement is granted because there are no genuine issues of disputed fact. Under the entrustment exclusion, which is clear and unambiguous, coverage is barred as to claims arising from the dishonest and criminal conduct of those to whom the property has been

3

entrusted, such as East Market. The undisputed facts show that East Market vandalized the property.

"[U]nambiguous provisions of an insurance contract must be given their plain and ordinary meaning, and the interpretation of such provisions is a question of law for the court." *Lend Lease (US) Constr. LMB Inc. v Zurich Am. Ins. Co.*, 28 N.Y.3d 675, 682 (2017). "[A]ny ambiguity must be construed in favor of the insured and against the insurer." *Id*. "[B]efore an insurance company is permitted to avoid policy coverage, it must satisfy the burden which it bears of establishing that the exclusions or exemptions apply in the particular case, and that they are subject to no other reasonable interpretation." *Id*. at 684 (internal quotation marks omitted and alteration in original).

"Courts in New York have held that exclusions for the dishonest acts of persons to whom the insured entrusts its property are enforceable." *Warehouse Wines & Spirits, Inc. v. Travelers Property Cas. Co. of Am.*, 101 F. Supp. 3d 299, 305 (S.D.N.Y. 2015) (applying New York law) (collecting cases). "[A]n insurance contract's language must be given its ordinary meaning, and common words in a policy such as entrusted are not used as words of art with legalistic implications." *Lexington Park Realty LLC v. Nat'l Union Fire Ins.*, 992 N.Y.S.2d 1, 2 (1st Dep't 2014) (internal quotation marks omitted). "[W]hen a contract indicates that the property is entrusted, it can be understood that the parties mean that possession of property is willingly surrendered or delivered or transferred, to be used for the purpose intended by the owner." *Id*. (internal quotation marks and brackets omitted). "The controlling element is the design of the owner rather than the motive of the one who obtained possession." *Id*.

Here, the parties do not dispute that the entrustment exclusion is valid; rather, Plaintiff contends that it does not apply. Plaintiff argues that, (1) it is disputed whether East Market

4

vandalized the premises, and (2) that even if East Market did vandalize the premises, it was after Plaintiff had revoked its entrustment. Both of these arguments fail.

First, the undisputed evidence shows that East Market vandalized the premises. On January 15, 2015, Bruce Xi, the property manager, reported the vandalism to the police, stating that East Market was responsible for it. During the subsequent insurance investigation, he testified under oath that East Market caused the damage to the premises. On August 26, 2015, Plaintiff's tenant, Ming Dynasty, filed a Complaint in the Supreme Court of New York alleging that East Market and its principals "caus[ed] damage" to the premises. There were no signs of forced entry, and Plaintiff admits that whoever vandalized the premises had a key. Xi testified that only East Market had access to the restaurant. Aspen's insurance adjuster, Todd Ballot, stated in his affidavit that, "at the time of [his] first inspection . . . the premises were secure; meaning the first-floor door adjacent to the sidewalk of the premises was closed and locked." Plaintiff has not proffered any evidence, other than the superintendent Shaw's testimony that he did not recognize the vandals, to controvert Defendant's evidence that East Market was responsible for the vandalism. Plaintiff's unsubstantiated assertion that East Market's culpability is a disputed fact is insufficient to create a triable issue to defeat summary judgment. *See, e.g.*, *AXA Art Ins. Corp. v. Renaissance Art Investors, LLC*, 936 N.Y.S.2d 57 (Table), at *4 (N.Y. Sup. Ct. 2011) (rejecting argument that there was a material factual dispute as to who stole the artworks at issue because defendant failed to proffer "any proof or explanation as to what may have happened to the art works").

Second, based on the clear and unambiguous language of the insurance contract, no reasonable jury could conclude that entrustment exclusion does not preclude coverage for claims arising from East Market's vandalism of the premises. As a threshold matter, Plaintiff admits that

5

it "initially entrusted the subject premises to East Market Restaurant." Plaintiff's managing partner, Bill Lam, filed an affidavit stating that, with Plaintiff's knowledge and consent, Ming Dynasty sub-leased the premises to East Market to operate a restaurant from approximately 2009 to 2015. After January 10, 2015, the date on which East Market was to vacate the premises, Plaintiff did not retrieve the keys to the property or change the locks until January 23, 2015 -- after the vandalism had occurred. Because under the insurance contract's unambiguous terms, Plaintiff entrusted the property to East Market, and East Market vandalized it -- a dishonest or criminal act -- the entrustment exclusion applies.

Plaintiff argues that the entrustment exclusion does not apply to the facts of this case because Plaintiff terminated its entrustment by evicting East Market from the premises on January 5, 2015. This argument is unpersuasive. Construing the entrustment exclusion in Plaintiff's favor, but interpreting it in accordance with its plain meaning, it is sufficient that the vandalism was causally related to Plaintiff's initial entrustment of the premises to East Market. *See, e.g.*, *Lexington Park Realty LLC*, 992 N.Y.S.2d at 1–2 (holding that the entrustment exclusion applied where plaintiff's tenant did not return cabinets and appliances after the termination of the lease agreement); *see also Easy Corner, Inc. v. State Nat'l Ins. Co.*, 56 F. Supp. 3d 699, 707 (E.D. Pa. 2014) (applying Pennsylvania law, granting summary judgment based on a similar entrustment exclusion because "the loss [was] causally connected to the act of entrustment: because of [the employee's] prior management of the bar, [the employee] had a key and was able to access the building easily"). The entrustment exclusion applies broadly to "loss or damage caused by or resulting from" a dishonest or criminal act by "anyone to whom you entrust the property for any purpose," and includes no language suggesting that the parties intended to limit its application to acts occurring before the conclusion of the parties' legal

6

relationship. *See, e.g.*, *id*. (applying Pennsylvania law, holding that "entrustment exclusions . . . apply even after the temporal termination of an entrustment, provided that there is a causal connection between the between the act of entrustment and the resulting loss"); *Su v. New Century Ins. Servs., Inc.*, No. 12 Civ. 3894, 2013 WL 5775160, at *4 (C.D. Cal. Oct. 25, 2013) (internal quotation marks omitted) (applying California law, finding that "[e]ven if the loss occurs after the entrustment of the property has terminated, the exclusion still applies so long as there is a causal connection between the act of entrustment and the resulting loss"); *F.D. Stella Prods. Co. v. Gen. Star Indem. Co.*, No. 03 Civ. 5151, 2005 WL 3436388 (N.D. Ill. Dec. 12, 2005) (applying Illinois law, holding that an entrustment exclusion "applies even if the dishonest or criminal act occurs after the entrustment has terminated"). Nor has Plaintiff proffered any evidence of the parties' intent to limit the entrustment exclusion's applicability.

Plaintiff also argues that this case is distinguishable from the cases cited by Aspen because, here, East Market was legally evicted, as opposed to the parties' relationship coming to its natural conclusion, or concluding in some other way. Plaintiff provides no legal authority for the proposition that East Market's formal eviction is legally relevant to the scope of the entrustment exclusion.

## IV. CONCLUSION

Defendant's motion for summary judgment is GRANTED. The Clerk of Court is directed to close the motion at Docket No. 23 and close the case.

Dated: January 18, 2018
     New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE